# EXHIBIT 5

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

DIEGO N. *et al.*,                    )
                                      )
                    Plaintiffs,       )
                                      )
v.                                    )
                                      )   No. 1:26-cv-577
U.S. DEPARTMENT OF HEALTH AND         )
HUMAN SERVICES, *et al.*,             )
                                      )
                    Defendants.       )

## DECLARATION OF ALEXA L. SENDUKAS

**DECLARATION OF ALEXA L. SENDUKAS**

I, Alexa L. Sendukas, do hereby declare as follows:

1. I am at least 18 years of age. I have personal knowledge of the facts stated herein and, if called to testify, I could and would testify competently thereto.

2. I am a Managing Attorney at the Galveston-Houston Immigrant Representation Project (GHIRP) in Houston, Texas.  I manage GHIRP's Immigrant Children and Youth (ICY) program. I have been in this role since the program was created in April 2021.  As a licensed attorney, I have represented unaccompanied children and youth, both detained and released, in Texas for more than ten years.

3. GHIRP's mission is to build a resilient, diverse community by providing comprehensive representation and holistic legal services to immigrants in need.  We have served children in the Office of Refugee Resettlement (ORR) custody and have been a subcontractor of the Acacia Center for Justice, and its predecessor the Vera Institute of Justice, since our founding.  GHIRP currently provides regular legal services to three short-term ORR facilities in the Houston, Texas area that hold around one hundred children combined at a given time, and we also have clients at other ORR facilities.  We have served over 4,400 children in ORR custody to date.

4. We currently work with children detained in ORR custody across four different short-term facilities.

5. In the nearly five years GHIRP has had an Immigrant Children and Youth program, I am aware of only one child re-referral to ORR before January 2025. However, since January 2025, I am aware of sixteen (16) children who have been re-referred to ORR after having been released previously to a vetted and approved sponsor. Children have been re-referred for many different reasons, as well as for reasons that we do not fully understand.  The children we have seen

include those who were driving or riding as passengers in cars stopped by police during traffic stops or at immigration checkpoints, who were never accused of or charged with criminal violations. It also includes children whose homes were visited by Immigration and Customs Enforcement (ICE) agents, as well as children who were accompanying their parents to routine appointments, and some children who were re-referred after being arrested by local law enforcement. It is my understanding that ORR applies the same sponsorship application requirements to all re-referred cases. These are the same requirements that apply to the cases of children arriving in ORR custody for the first time. We are observing that many of these re-referred children continue to wait in detention for months to be reunified with the same family members they already had approved by ORR.

6.      Since February 2025, most children in ORR custody are experiencing prolonged lengths of stay. This has caused increased instances of detention fatigue, mental health crises, and hospitalizations of the children in the facilities we serve.  We have discussed this situation many times with ORR-contracted facility staff, who have also expressed concern and truly seem to be trying their best to keep up the children's spirits and entertain or distract them from their current situations; however, it is getting ever more difficult to safeguard their mental health.  We have seen this to be particularly true for the tender age children (i.e. children who are twelve-years-old or younger), as they are too young to understand why they can't go live with their family after talking with their sponsors on the phone and, for the local sponsors, visiting them in person over the course of many months.

7.      Children are also remaining in prolonged detention because sponsors have a justifiable fear of immigration enforcement against them. I am aware of four sponsors who have been detained by ICE while participating in the ORR sponsorship process for children detained at the

facilities we serve.  These individuals, including two fathers, a brother, and an uncle, were in the final stages of their sponsorship application process and had already passed background checks and completed numerous other requirements for ORR. The five children they were sponsoring had spent several months in detention waiting to be reunified with their family members and were devastated to learn of their detention. These children's reunifications are now either significantly delayed, or altogether halted since their sponsors have been detained, which results in even more time detained for the children.  I am also aware of multiple sponsors of children at other Houston-area ORR facilities who were detained, and even several attempted detentions of sponsors for children at the ORR facilities we serve.

8.      The children in ORR custody who remain separated from their family members are struggling tremendously.  We represent multiple children who were separated from their parents, siblings, aunt, uncle, and/or grandparents, including prior ORR sponsors, after being apprehended by immigration authorities in the interior of the United States.  These children had already begun to rebuild their lives here, and many of them fled their countries of origin in search of safety and protection and thought they had found it. For them to end up back in government custody now, for extended periods of time, without hope of being reunified with their caring family members because of their sponsor's immigration status and/or inability to provide documents newly required by ORR, is extremely harmful to their mental health.  Even when children do have the possibility of returning to their previously approved sponsor, we have seen children experiencing severe stress and frustration as the process drags on for months without a clear end in sight.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 22nd day of February, 2026, in Piedmont, California.

/s/ Alexa L. Sendukas

Alexa L. Sendukas